FILED

MAY 16 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

BARJA INC., a California Corporation;
FRY'S 710 FREEWAY INVESTMENT
INC., a California Corporation,

                    Plaintiffs - Appellants,

   v.

EQUILON ENTERPRISES, LLC, a
Delaware limited liability company,

                    Defendant - Appellee.

No. 11-56156

D.C. No. 2:10-cv-06936-ODW-
PLA

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, District Judge, Presiding

Argued and Submitted April 9, 2013
Pasadena, California

Before: BERZON, TALLMAN, and M. SMITH, Circuit Judges.

   Barja Inc. and Fry's 710 Freeway Investment, Inc. ("Appellants") appeal the

district court's summary judgment in favor of Equilon Enterprises, LLC.

Appellants operated Shell-brand service stations in California pursuant to Retail

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Facility Lease and Retail Sales Agreements with Equilon. They allege that Equilon failed to comply with California Business & Professions Code § 20999.25 when it decided to sell the service stations as part of a bulk transaction but did not properly extend right of first refusal offers ("ROFRs") to appellants. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Parties to a bulk purchase transaction may allocate a portion of the total purchase price to a single site in order to allow an existing franchisee to exercise a right of first refusal, as long as the valuation of the individual property is readily apparent from the bulk offer and the valuation has not been manipulated to the franchisor's advantage. *Forty-Niner Truck Plaza, Inc. v. Union Oil Co. of Cal.*, 58 Cal. App. 4th 1261, 1279–80 (Cal. Ct. App. 1997) (citing *Arnold v. Amoco Oil Co.*, 872 F.Supp. 1493, 1499 (W.D. Va. 1995)). Appellants have failed to raise genuine issues of material fact either that the valuations of the individual sites were not readily apparent from the bulk offer or that Equilon manipulated the individual property valuations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Likewise, appellants have failed to raise a genuine issue of material fact that the ROFRs here did not "approach[] fair market value under an objectively reasonable analysis," *Forty-Niner*, 58 Cal. App. 4th at 1281 (citations omitted), and thus were not bona fide offers under § 20999.25(a).

Appellants remaining contentions are unpersuasive.

**AFFIRMED.**

*Barja v. Equilon*, No. 11-56156

BERZON, Circuit Judge, dissenting:

I respectfully dissent. The record reflects a disputed issue of material fact as to whether the right of first refusal offers (ROFRs) Equilon extended to Barja and Fry's provided the recipients of the offers with an opportunity to purchase the same assets as the third party bidder, Apro, would acquire for the same price. A question remains whether, for the offer price, Apro was buying something that Barja and Fry's were not. Summary judgment was therefore inappropriate.

The record indicates that if Apro purchased the franchisees' stations from Equilon, it would acquire not only the land, improvements, and equipment at each station site, but also the right to supply the stations with fuel, as the exclusive wholesale distributor, for at least ten years. In contrast, the record suggests that if Barja and Fry's exercised their rights of first refusal and purchased their respective stations at the prices identified by Apro, they would obtain no such wholesale distribution rights, only the station property and its accouterments.

Specifically, the record permits an inference that there was a value attributed to the acquisition of the fuel supply rights, independent of the station property, and that Apro was required to, and did, include that value in its overall bulk bid as well as in the portions of the bulk bid attributed to Barja's and Fry's respective stations.

-1-

Thus, contrary to the majority's suggestion, the value Apro placed on the fuel supply rights may not have simply reflected its ability to extract greater profit from the stations than the franchisees could. If in fact Apro acquired and paid separately for the distribution rights as part of the same transaction in which it acquired the real estate and equipment, then Apro did not just "come to the table with [a] different hand[]," *Keener v. Exxon Co., U.S.A.*, 32 F.3d 127, 132 (4th Cir. 1994), based on "*preexisting or planned* commercial relationships that g[a]ve it certain advantages in acquiring a franchise on a particular site," *Forty-Niner Truck Plaza, Inc. v. Union Oil Co.*, 58 Cal. App. 4th 1261, 1282 (1997) (emphasis added). Instead, if that turns out to be so, then Apro purchased a commercial relationship with Equilon—that of an exclusive, wholesale distributor of Shell gasoline—as part of its bulk acquisition of the franchises in the Los Angeles area; the supply rights were an asset for which Apro was paying; and the value of those rights was reflected in the purchase price for each station, on which the ROFRs were based. As the record facts give rise to these permissible inferences, summary judgment should not have been granted, and we should be reversing for trial.

That the individual station valuations were apparent from the face of Apro's bulk bid and that there was no evidence of price manipulation do not detract from that conclusion. Those circumstances are necessary but not sufficient conditions to

-2-

demonstrate compliance with California Business & Professions Code § 20999.25. The California statute, like its federal counterpart, the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*, provides that a franchisee must have a bona fide opportunity to purchase from the franchisor *the same interests* in the premises as are on offer to a third party purchaser.  *See Forty-Niner*, 58 Cal. App. 4th at 1266, 1273–74.  And it remains unclear on the present record whether that fundamental requirement was met here.

Accordingly, I would reverse the district court's grant of summary judgment in favor of Equilon.